NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 23, 2022

S22A0531. PRICKETT v. STATE.

MCMILLIAN, Justice.

Santron Prickett appeals his conviction for felony murder and other charges in connection with the death of Antwan Curry.[1] On

---

[1] Curry was killed on March 15, 2010. On June 15, 2010, a Fulton County grand jury indicted Prickett and Jaquavious Reed in connection with Curry's death, charging them jointly with murder (Count 1); felony murder predicated on aggravated assault (Count 2); aggravated assault (Count 4); and possession of a firearm during the commission of a felony (Count 5). Prickett was also charged with felony murder predicated on possession of a firearm by a convicted felon (Count 3) and possession of a firearm by a convicted felon (Count 6). Reed and Prickett were tried together before a jury from May 2 to May 10, 2011. Reed was convicted of all counts charged against him, and Prickett was convicted of all counts except malice murder. Reed filed a separate appeal, which has been docketed as Case No. S22A0530. Prickett was sentenced to life in prison on Counts 2 and 3 and five years in prison on Count 5 to run consecutive to Count 2. Prickett's conviction under Count 4 was merged into Count 3, and his conviction under Count 6 was merged into Count 2 for sentencing purposes.

Prickett's trial counsel filed a timely motion for new trial on May 19, 2011, and new counsel filed an amended motion for new trial on January 10, 2020. Following a hearing on the motion on July 21 to 23, 2021, the trial court entered an order denying the motion as amended on October 21, 2021. Prickett filed a timely notice of appeal, and the case was docketed to the April 2022 term of this Court and submitted for a decision on the briefs.

appeal, Prickett asserts that the trial court erred in denying his motion for new trial because (1) he received ineffective assistance of trial counsel when his attorney failed to stipulate to his status as a felon, thereby tainting the jury with evidence of Prickett's prior criminal conviction; (2) his constitutional right to be present at all critical stages of the trial was violated when the trial court conferred with counsel out of his presence 26 times during trial; and (3) the trial court failed to rebuke the prosecutor and declare a mistrial, or, in the alternative, give a curative instruction to the jury following defense counsel's objection to an improper comment by the prosecutor during closing arguments. Because we determine that the trial court erred in sentencing Prickett, we vacate his convictions and sentences and remand the case for resentencing, but we otherwise affirm.

The evidence at trial showed that on the afternoon of March 15, 2010, Curry stopped at an apartment complex in Fulton County, and purchased marijuana. At around 1:00 p.m., Curry became involved in a physical altercation with Prickett at the complex. Five

2

witnesses, who all knew Prickett, testified at trial that they observed the altercation.

Laketa Smith was across the street from the apartment complex when she saw Prickett "tussling" with another man and heard two gunshots. She told police at the time that Prickett pulled out a gun and shot the other man, but she testified at trial that Prickett did not have a gun.[2] After the shots were fired, Prickett ran away. The other man started to follow him but stopped when two other men came up to him.

Willie Wilson was outside his apartment when he saw Prickett and another man fighting, and it looked like Prickett was being beaten up. Pricket was yelling, "[G]et this f*****g n****r off me." While they were fighting, Wilson heard a "pop" when a gun went off. Wilson testified at trial that it looked like the other man had the gun, but he told police at the time that he did not know who had the gun. The other man was shot in the leg, and Prickett was bleeding

---

[2] Smith further testified at trial that the other man did not have a gun and also that she could not see whether the other man had a gun.

from his hand. Prickett started running after he was shot, leaving the other man in the parking lot on his knees.

That same day, Bianca Haney heard a verbal altercation between Prickett and another man at the apartment complex. She saw the other man go back to his truck and then charge at Prickett. The two men engaged in "a tussle" on the ground, and the other man, who appeared to be winning the fight, was on top of Prickett. Haney heard shots, but she never saw who had the gun. Everybody started running, and Prickett ran past her. She did not see what happened next, but she heard more gunshots.

Harriett Feggins said that she was sitting in her car at the apartment complex when she saw an altercation involving Prickett and another man. She observed the other man go to his truck, get a handgun, and head toward Prickett. Prickett turned around, and the two men started scuffling. At first she thought they were just wrestling, but it appeared "pretty intense." Then she heard a shot and saw Prickett grab his hand and run away.

Keon Burns testified that he was at the apartment complex

4

when he heard Prickett and another man[3] arguing about the fact that the man bought marijuana from someone other than Prickett. Prickett shot the man in the leg. As the two men wrestled over the gun, Burns saw Prickett shoot himself in the hand, and Prickett's co-defendant, Jaquavious Reed, whom Burns knew, took the gun from Prickett as Prickett ran away. Burns stated that after Prickett left, Reed approached the other man and shot him. The gunshot victim, who died at the scene, was later identified as Curry.

The medical examiner testified that in addition to the gunshot wound to Curry's knee, Curry had gunshot wounds to the chest and the shoulder. She stated that Curry died from a bullet that entered his shoulder and traveled through his body striking his lung, heart, and liver.

The State also presented evidence at trial showing that after his altercation with Curry, Prickett made a number of phone calls to Latasha Bigby, the mother of one of his children. In the days after

---

[3] Burns recognized the other man as the man who sometimes sprayed for bugs in the apartment of his child's mother.

Curry's death, Bigby informed police that Prickett told her that, as he ran away from the area, he said, "[T]hat n****r shot me. . . . [Y]'all kill that p***y n****r." Bigby also told police that Prickett said he and another man got into a scuffle because the man would not purchase marijuana from him. Prickett told her that he shot the other man in the leg and ran, but the man tackled him and they started scuffling, which is when Prickett shot himself. However, at trial, Bigby recanted her statements to police, explaining that everything she told them earlier was a lie because she was mad at Prickett at the time.

Zakkiah Robinson, Prickett's then-girlfriend, testified that at around 7:00 or 8:00 p.m. on the night of the altercation, Prickett returned to the apartment they shared, which was about ten minutes away from the crime scene. Prickett had been shot in the finger, but Robinson testified that they did not seek medical treatment for his injuries. Prickett told Robinson that he had gotten into a fight at the apartment complex, and the other man had been shot. Prickett said that he jumped up and took off running after he

6

was shot. As Prickett was running, he said he heard more gunshots. Robinson and Prickett left their apartment that evening to get supplies to treat Prickett's injuries and stayed the night at Robinson's mother's house. Prickett was arrested there the next day and taken to the hospital for treatment of his hand.

Prickett presented two witnesses at trial. The first witness said that, on the day of the altercation, he saw Curry go to his truck and get something from under his seat, which the witness later saw was a gun. The witness saw Curry and Prickett "tussling," and when a shot was fired, the witness ran back into his apartment. The second witness was a former Fulton County Police officer who testified about a 1999 incident involving Curry, for which Curry was indicted on a number of charges, including aggravated assault on a police officer. Curry later pleaded guilty to one charge of obstruction of a law enforcement officer.

1. Prickett contends that the trial court erred in denying his motion for new trial because his trial counsel rendered ineffective assistance by failing to stipulate that Prickett was a convicted felon,

7

thereby exposing Prickett's criminal record to the jury and "tainting" his trial.

"To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant." *Sawyer v. State*, 308 Ga. 375, 381 (2) (839 SE2d 582) (2020) (citation and punctuation omitted). See also *Strickland v. Washington*, 466 U.S. 668, 687-95 (III) (104 SCt 2052, 80 LE2d 674) (1984). In order to show that trial counsel's performance was deficient, a defendant must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Marshall v. State*, 297 Ga. 445, 448 (2) (774 SE2d 675) (2015) (citation and punctuation omitted). And to prove the required prejudice, a defendant must show a reasonable probability that, in the absence of counsel's deficient performance, the result of his trial would have been different. See *Strickland*, 466 U.S. at 694 (III). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." Id. The burden of establishing each of these two factors is "a heavy one." *Brown v. State*, 302 Ga. 454, 457-58 (2) (807 SE2d 369) (2017) (citation omitted), and this Court need not consider "both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697 (IV).

The indictment in this case charged Prickett with possession of a firearm by a convicted felon based on his 2007 conviction for possession of cocaine with the intent to distribute. At the hearing on the motion for new trial, Prickett's trial counsel had no specific recollection of why he did not pursue a stipulation of Prickett's status as a felon and/or a redaction of the indictment in Prickett's case. But he testified that, although any prior conviction is concerning for a defendant, in this case, he thought the facts were in Prickett's favor, and he still thought so at the time of the motion hearing. Although he could not recall the reasons for his decision in Prickett's case, trial counsel said that, generally, if he saw something that would help a client in not stipulating, he would

9

choose that course. Therefore, he believed that he and his co-counsel would have made their decision in the way that they thought was going to help Prickett, and they may have thought that the facts were so much in Prickett's favor that they wanted to look like they were not hiding anything in order to gain credibility with the jury.

Pretermitting whether Prickett can show that his counsel's performance was deficient in this regard, we conclude that he failed to demonstrate a reasonable probability that the result of his trial would have been different if his trial counsel had sought a stipulation. See *Parker v. State*, 309 Ga. 736, 745 (5) (848 SE2d 117) (2020) (citation and punctuation omitted) (trial counsel's failure to stipulate to defendant's status as a felon did not support a claim of ineffective assistance of counsel where defendant failed to show a reasonable probability that the result of his trial would have been different with a stipulation). Although this Court has previously acknowledged that error may occur if, for example, a trial court refuses to allow a stipulation to a prior offense "where a defendant's prior conviction is of the nature likely to inflame the jury's passions

and raise the risk of a conviction based on improper considerations, and the purpose of the evidence is solely to prove the defendant's status as a convicted felon," we also have determined that "even violent crimes, crimes involving firearms, and drug offenses were not likely to inflame the jury's passions in murder cases." Id. Therefore, we have recognized that the absence of a stipulation does not always have prejudicial impact. Id.

At Prickett's trial, his prior drug offense was identified only in passing when the prosecutor introduced, without objection, a certified copy of the conviction. The prosecutor then immediately began eliciting testimony unrelated to the prior conviction and did not mention the nature of the prior offense again. During closing argument, the prosecutor stated only that if the jury found that Prickett brought a gun to the crime scene and was a convicted felon, they could find him guilty of the charge of possession a firearm by a convicted felon. Thus, any impact from the disclosure of this conviction was minimal.

In contrast, the evidence against Prickett was strong. Five

11

witnesses identified Prickett as the person involved in the altercation with Curry during which Curry was shot. There was evidence that the altercation occurred because Prickett was upset that Curry had bought marijuana from someone else and not Prickett. And Prickett admitted to Bigby that he shot Curry and his own hand during the encounter. Burns testified that as Prickett fled the scene, he gave Reed the gun he used to shoot Curry, and Prickett told Bigby that he directed the others present to kill Curry. Even though Bigby later recanted her prior statements, "the jury was authorized to believe [Bigby's] inculpatory pre-trial statements and to reject [her] exculpatory testimony at trial." *Handley v. State*, 289 Ga. 786, 787 (1) (716 SE2d 176) (2011) (citations and punctuation omitted). Thus, although there was evidence that Reed, not Prickett, fired the fatal shot, there also was evidence that Prickett gave the gun to Reed and directed that Curry be killed.

Moreover, during its final jury charge, the trial court gave a limiting instruction on the use of the prior conviction evidence. That instruction informed the jurors that evidence sometimes is admitted

for a limited purpose and directed them to consider the evidence of Prickett's prior conviction only as it related to a required element of Count 3 (felony murder based on possession of a firearm by a convicted felon) and Count 6 (possession of a firearm by a convicted felon) "and not for any other purpose or count." The trial court's charge later defined the crime of possession of a firearm by a convicted felon and instructed the jury that possession of cocaine with intent to distribute is a felony. We ordinarily presume that jurors follow such instructions without clear evidence to the contrary, which we do not have here. See *Ash v. State*, 312 Ga. 771, 782 (2) (865 SE2d 150) (2021); *Collins v. State*, 312 Ga. 727, 737 (4) (864 SE2d 85) (2021).

Under these circumstances, we conclude that Prickett's claim of ineffective assistance of counsel fails because Prickett has failed to show that there was a reasonable probability that the outcome of the trial would have been different if trial counsel had stipulated to Prickett's felony status. See *Bentley v. State*, 307 Ga. 1, 9-10 (2) (b) (834 SE2d 549) (2019) (ineffective assistance of counsel claim fails

where no prejudice resulted from trial counsel's failure to stipulate to defendant's status as a felon as evidence against defendant was compelling, mention of prior felony was minimal and appropriate for proof of charged crime, and trial court gave limiting instruction). Cf. *Stephens v. State*, 307 Ga. 731, 739 (4) (838 SE2d 275) (2020) (holding that trial court did not abuse its discretion in denying defendant's motion to stipulate to his prior felony, where "the name or nature of [the] prior offense, possession of cocaine with intent to distribute, did not raise the risk that [defendant's] verdict for the murder of [the victim] was tainted by improper considerations").

2. Prickett next asserts that the trial court erred in denying his motion for new trial because the court violated his constitutional right to be present at all critical stages of his trial by conferring with counsel out of Prickett's presence 26 times during bench conferences.[4]

---

[4] Although Prickett references the right to be present under the federal constitution in his enumeration of error, his argument only addresses his right to be present under the Georgia Constitution, and he makes no argument that the federal constitution provides different or more extensive rights. .

14

It is well settled that "the Georgia Constitution guarantees a criminal defendant the right to be present, and see and hear, all the proceedings which are had against him on the trial before the Court." *Steen v. State*, 312 Ga. 614, 617 (2) (864 SE2d 27) (2021) (citation and punctuation omitted). See also *Zamora v. State*, 291 Ga. 512, 517-18 (7) (b) (731 SE2d 658) (2012). This right "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." *Nesby v. State*, 310 Ga. 757, 758 (2) (853 SE2d 631) (2021) (citation and punctuation omitted).

Although the right to be present can extend to bench conferences, it "does not extend to situations where the defendant's presence bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge, and thus would be useless, or the benefit but a shadow." *Champ v. State*, 310 Ga. 832, 840 (2) (b) (854 SE2d 706) (2021) (citation and punctuation omitted). "Such situations include bench conferences that deal with questions of law involving essentially legal argument about which the

defendant presumably has no knowledge, or with procedural or logistical matters." Id. (citation and punctuation omitted). See also *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013) (defendant's absence from such bench conferences did not violate his right to be present).

Moreover, a defendant may waive the constitutional right to be present. We have held under the Georgia Constitution that

> the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses. A defendant may relinquish his right in several ways: if he personally waives the right in court; if his counsel waives the right at his express direction; if his counsel waives the right in open court while he is present; or, as seen most commonly in our case law, if his counsel waives the right and the defendant subsequently acquiesces to that waiver.

*Champ*, 310 Ga. at 841 (2) (c) (citation and punctuation omitted). "Acquiescence occurs if a defendant is aware of the proceedings taking place in his absence but remains silent, so long as he had sufficient information concerning the matters occurring outside his presence for his silence to be fairly construed as consent." *Steen*, 312 Ga. at 617 (2) (citation and punctuation omitted). See also *Champ*,

310 Ga. at 841 (2) (c).

In this case, counsel for the co-defendants entered into a stipulation with the State in which they agreed that there were "26 unrecorded bench conferences" (the "Stipulation");[5] the participating trial counsel could not recall the substance of what occurred in those bench conferences; and no amount of time or effort on behalf of the parties would enable those attorneys to recall what occurred. The trial court subsequently issued an order stating that despite good-faith efforts by all parties involved, the record of those bench conferences could not be recreated nor the transcript completed. Prickett argues that each of these bench conferences was held outside his presence in violation of his constitutional right to be present.

At the hearing on Prickett's motion for new trial, his trial

---

[5] Although the parties and the trial court repeatedly reference 26 unrecorded bench conferences, the Stipulation only identifies 25 bench conferences. One of the conferences mentioned in the prior motion to complete the record was omitted from the list of bench conferences in the Stipulation and other later filings. The transcript reflects that most of the omitted 26th conference was held in open court without the jury present.

17

counsel testified that he had no recollection of what the unrecorded bench conferences in this case involved or of discussing them with Prickett, but he stated that it was his "routine practice" to come back to the defense table and tell his client "what generally was discussed or what decision the judge may have made." Trial counsel also stated that he did not make a formal waiver of Prickett's right to be present at those conferences; instead, counsel said that he attended the bench conferences "and told [Prickett] what happened." Trial counsel also noted that never in his career has he ever had a client approach the bench to participate in bench conferences. Prickett did not testify at the hearing, and thus trial counsel's testimony is uncontradicted.

In its order denying Prickett's motion on this ground, the trial court stated it had reviewed the record, especially the portions before and after the bench conference, and determined that those conferences "dealt with either logistical/procedural matters or questions of law," and specifically ruled that any issues regarding jury selection were done in open court where Prickett could hear all

18

the arguments and rulings. The court further determined that Prickett acquiesced in the proceedings when his trial counsel made no objection and Prickett thereafter remained silent.

We note as an initial matter that Prickett makes no attempt to address any specific bench conference or to contest the trial court's findings that the bench conferences at his trial involved legal, procedural or logistical matters as to any individual conference. Instead, he simply asserts that all the bench conferences took place during critical phases of his trial and thus his rights were violated as to all of them. And although Prickett criticizes the trial court's methodology in determining the subject of the bench conferences from their surrounding context, he makes no effort to show as to any individual conference how the court's methodology led to an inaccurate conclusion.

The fact that the bench conferences were not transcribed does not excuse the failure to show that any of the bench conferences "were the sort that implicated his right to be present," *Nesby*, 310 Ga. at 759 (2) (involving unrecorded bench conferences) (citation and

punctuation omitted). Moreover, "mere speculation as to what may have been discussed at the conference cannot serve as the basis for the grant of a new trial.'" *Reeves v. State*, 309 Ga. 645, 648 (2) (847 SE2d 551) (2020) (citation and punctuation omitted). Therefore, Prickett has failed to show that his constitutional right to be present was violated. See *Nesby*, 310 Ga. at 759 (2); *Heywood*, 292 Ga. at 774 (3).

In any event, even if Prickett's constitutional right to be present were implicated, the record supports the trial court's conclusion that Prickett acquiesced in his trial counsel's waiver of his right to be present. Prickett's trial counsel testified that he had never had a client come to the bench for conferences, but it was his practice when he returned from such conferences to tell the defendant what had transpired at the bench, and there was no evidence that he deviated from this practice at Prickett's trial. The trial court expressly credited counsel's testimony in ruling on the motion for new trial. Under these circumstances, we conclude that Prickett acquiesced in his counsel's waiver of his right to be present

20

during the bench conferences in his trial. See *Young v. State*, 312 Ga. 71, 79 (9) (860 SE2d 746) (2021); *Murphy v. State*, 299 Ga. 238, 241-42 (2) (787 SE2d 721) (2016). Accordingly, Prickett is not entitled to a new trial on this ground.

3. Prickett also argues that the trial court erred in denying his motion for new trial because the trial court failed to rebuke the prosecutor and declare a mistrial, or, in the alternative, give a curative instruction to the jury, following his counsel's objection to a comment by the prosecutor during closing arguments in which the prosecutor referenced a redacted portion of a jailhouse conversation.

In the disputed portion of the argument, the prosecutor stated, "Because you know from the jail recordings Prickett says, 'I couldn't go to the doctor; I had to go to the CVS because I knew they were looking for me.'" Prickett's counsel immediately asked to approach the bench for a conference, which was not transcribed. Following the conference, the trial court neither rebuked the prosecutor nor gave a curative instruction, and the prosecutor continued her closing argument. After the prosecutor concluded her argument, the jury

was excused for a ten-minute recess, and Prickett's counsel restated his objection to the State's use of that portion of the jailhouse recording. The trial court noted the objection for the record and summoned the jury back to the courtroom but gave no curative instructions regarding the prosecution's argument. Prickett contends that the trial court's failure to take any action in response to his objection was an abuse of discretion, which resulted in harmful error, as the court had a duty under OCGA § 17-8-75[6] to intervene with a curative instruction or to grant a mistrial.[7]

"A trial court has broad discretion when responding to an alleged violation of OCGA § 17-8-75." *Parker v. State*, 276 Ga. 598,

---

[6] OCGA § 17-8-75 provides:
Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender.

[7] To the extent that Prickett also raises an issue of prosecutorial misconduct on appeal, any such argument is waived because he did not raise it below. See *Gates v. State*, 298 Ga. 324, 328-29 (4) (781 SE2d 772) (2016) (defendant's failure to object to the prosecutor's argument at trial waives appellate review of alleged errors based on improper remarks during closing argument).

22

599 (3) (581 SE2d 7) (2003). Pretermitting whether the trial court failed to fulfill its duty under OCGA § 17-8-75 in this case, we conclude that any such error was harmless in light of the evidence at trial that supported the inference that Prickett had chosen not to seek medical treatment because he knew that the police were looking for him and the otherwise strong evidence against Prickett. See *Dobbins v. State*, 309 Ga. 163, 168 (3) (844 SE2d 814) (2020) (trial court error under OCGA § 17-8-75 analyzed for harmless error). See also *Caldwell v. State*, 313 Ga. 640, 648 (2) (872 SE2d 712) (2022) (in assessing error under OCGA § 17-8-75, this Court reviews the record de novo and weighs the evidence as we would expect reasonable jurors to have done).

The evidence showed that Prickett ran away after his altercation with Curry, and he chose not to seek professional medical treatment. Instead, Robinson treated the gunshot wound to Prickett's finger, after she and Prickett went somewhere to get supplies to clean the wound. Additionally, Prickett did not go directly home after the incident with Curry, which took place

23

midday; instead, he arrived home hours later, at 7:00 or 8:00 p.m., even though the two locations were only minutes apart. And Prickett did not stay home once he got there but instead spent that night away from his apartment. Thus, even assuming the jury did not hear Prickett's recorded statement explaining that he did not seek medical treatment because he knew the police were looking for him during the trial, the State presented evidence that would have supported such an inference. And in contrast to the fleeting reference to Prickett's recorded statement in closing, the evidence supporting Prickett's guilt was substantial, as recounted in Division 1.

In addition, in his preliminary charge to the jurors, the trial judge instructed them that evidence consists of testimony and exhibits and that what the lawyers say in opening statements is not evidence. In his final charge, the judge repeated that definition of evidence and stated that evidence does not include opening statements or closing arguments. And we presume that the jurors followed the trial court's instructions not to treat counsel's

arguments as evidence. See *Lofton v. State*, 309 Ga. 349, 366 (6) (b) (iv) (846 SE2d 57) (2020); *Robinson v. State*, 308 Ga. 543, 552 (2) (b) (ii) (842 SE2d 54) (2020).

Under these circumstances, any error in the trial court's response to Prickett's objection was harmless, as we cannot say it is highly probable that the prosecutor's reference to the redacted portion of the conversation contributed to the verdict. See *Gobert v. State*, 311 Ga. 305, 312 (4) (a) (857 SE2d 647) (2021) (harmless error under OCGA § 17-8-75 where evidence of defendant's guilt was strong and trial court instructed the jury that the lawyers' statements were not evidence); *Dobbins*, 309 Ga. at 168-169 (3) (alleged error under OCGA § 17-8-75 harmless because of the strong evidence against the defendant and the trial court's instructions that closing argument is not evidence).[8]

---

[8] For purposes of analysis, we have assumed one deficiency on the part of trial counsel and one trial court error, but we found each to have been harmless. Prickett does not argue that that this deficiency and error cumulatively resulted in prejudice, and, pretermitting whether this type of trial court error can be cumulated with trial counsel's deficiency for purposes of a cumulative error analysis, we discern no apparent cumulative prejudice

4. Finally, although not raised by Prickett on appeal, we discern certain errors in the trial court's sentencing order, which we will exercise our discretion to address. See *Lynn v. State*, 310 Ga. 608, 611 (1) (852 SE2d 843) (2020) (recognizing court's discretion to correct sua sponte certain sentencing errors on appeal).

The most significant error we discern in Prickett's sentence is the trial court's imposition of a life sentence on each of his two felony murder convictions when there was only one victim in this case. See *Martin v. State*, 308 Ga. 479, 484 (3) (841 SE2d 667) (2020); *Coe v. State*, 274 Ga. 265, 266 (2) (553 SE2d 784) (2001). This sentence failed to take into account that one of the two felony murder verdicts was vacated by operation of law. See *McCoy v. State*, 303 Ga. 141, 144 (3) (810 SE2d 487) (2018). "And . . . the decision as to which of the felony murder verdicts should be deemed vacated—a decision that may affect which other verdicts merge and thus what other

on this record. See *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors.").

sentences may be imposed—is left to the discretion of the trial court on remand."[9] *Martin*, 308 Ga. at 484 (3) (citation and punctuation omitted). Therefore, we vacate Prickett's convictions and sentences and remand the case to the trial court for resentencing in accordance with this opinion. See id.; *Cowart v. State*, 294 Ga. 333, 336 (2) (751 SE2d 399) (2013).

*Judgment affirmed in part, vacated in part, and case remanded for resentencing. All the Justices concur.*

---

[9] Additionally, we note that the trial court erred in merging Count 4 (aggravated assault) into Count 3 (felony murder based on possession of a firearm by a convicted felon) and Count 6 (possession of a firearm by a convicted felon) into Count 2 (felony murder based on aggravated assault). See *Crayton v. State*, 298 Ga. 792, 800-01 (7) (784 SE2d 343) (2016) (aggravated assault and felony murder premised on the possession of a firearm by a convicted felon generally do not merge). See also *Smith v. State*, 298 Ga. 357, 358 (2) (782 SE2d 26) (2016) (trial court erred in merging offenses underlying felony murder counts vacated by operation of law into those vacated counts; rather, defendant should have been convicted and sentenced for the crimes underlying the vacated felony murder counts).