NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: July 2, 2024

S24A0532.  TAVAREZ v. THE STATE.

PETERSON, Presiding Justice.

Edward Tavarez appeals his convictions for malice murder and other offenses arising from the shooting of Travis Ridley during a putative drug deal.[1] Tavarez argues that his trial counsel rendered

---

[1] Ridley was shot on June 1, 2017. On November 27, 2018, a DeKalb County grand jury returned an indictment against Tavarez, Abel Asmelash, and Jeanmarie Gonzalez. The indictment charged Tavarez with malice murder, three counts of felony murder, criminal solicitation, two counts of armed robbery (naming Ridley as the victim in one count and Erica Shavers as the victim in the other), aggravated assault, and possession of a firearm during the commission of a felony. It charged Asmelash with those crimes and others, and it charged Gonzalez with making a false statement. Gonzalez's case was severed prior to a trial of Asmelash and Tavarez that took place in January 2019. Asmelash's case was severed from Tavarez's during the January 2019 trial; according to a brief to this Court filed by the State, Asmelash was later convicted of malice murder and sentenced to life without the possibility of parole. Tavarez was found guilty of all charges against him. On March 5, 2019, the trial court sentenced Tavarez to life without the possibility of parole for malice murder, a consecutive three-year sentence for solicitation, two consecutive life sentences for armed robbery, and a consecutive five-year sentence for possession of a firearm during the commission of a felony; the aggravated assault count merged with the malice murder count, and the felony

ineffective assistance by failing to object to hearsay testimony by a detective that "bolster[ed]" the account of a key witness. He also argues that the trial court erred by conducting the trial while Tavarez's legs were shackled, forcing him to choose between not participating in bench conferences or the jury seeing him in these restraints. We conclude that Tavarez has not shown that any deficient performance of counsel in failing to object to the detective's testimony prejudiced Tavarez's defense. Tavarez failed to preserve his claim about the shackling itself, and he has not shown that he was excluded from any particular bench conference at which he had a right to be present. We therefore affirm.

The evidence admitted at trial showed the following.[2] On June

---

murder counts were vacated by operation of law. Prior to his sentencing, Tavarez filed a premature motion for new trial, which ripened upon entry of the final disposition order. See *Johnson v. State*, 316 Ga. 672, 672 n.1 (889 SE2d 914) (2023). The motion was amended by appellate counsel on March 15, 2023. In an order entered on July 20, 2023, following a hearing, the trial court denied the motion for new trial. A notice of appeal was filed on August 15, 2023. The case was docketed to this Court's April 2024 term and submitted for a decision on the briefs.

[2] Because this case involves a question of prejudice under *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), we recount the trial evidence in some detail, weighing the evidence as we would expect

2

1, 2017, Ridley was fatally shot in the breezeway of an apartment complex. Ridley's on-and-off-again girlfriend, Erica Shavers, gave the following account at trial. On the day of the shooting, Ridley picked up Shavers at her home, carrying a bag of $26,000 in cash. Based on what she overheard, Shavers understood that Ridley planned to purchase some marijuana. Ridley and Shavers drove in his purple Dodge Challenger to a building in which Ridley was attempting to open some sort of store. Ridley's friend, known as "Q," appeared at the store, with a money-counting device. A little later, Abel Asmelash and Rafael Nin-Polanco appeared in a silver Mercedes.[3] Ridley and Shavers followed the silver Mercedes to a gas station. While Ridley and Shavers were at the gas station, Q brought Ridley a gun at Ridley's request. Ridley and Shavers then followed

reasonable jurors to have done, rather than in the light most favorable to the verdicts. See *Harmon v. State*, __ Ga. __, __ (1) n.2 (__ SE2d __) (Case No. S24A0158, decided June 11, 2024).

[3] Shavers identified Asmelash in court but never identified Nin-Polanco by name, instead referring to him by the hat that he wore. During Shavers' testimony, the prosecutor began referring to the man who was driving with Asmelash as Nin-Polanco, and Shavers did not correct him. Shavers did make clear in her testimony that Tavarez was not one of the men she saw at the store. Shavers initially said that the Mercedes looked white to her, but then went along with the prosecutor's description of it and referred to it as silver.

the silver Mercedes to the parking deck of a DeKalb County apartment complex. While Ridley and Shavers waited in the car, Asmelash left the parking deck via an apartment-complex breezeway, and Nin-Polanco drove away to let another individual into the parking deck. After a few minutes, a different Mercedes (a white one) driven by Tavarez entered the deck and parked. Asmelash returned from the breezeway, entered the parked, white Mercedes, and sat with Tavarez for a moment. Ridley, Shavers, Asmelash, and Tavarez then got out of their cars and all walked into the breezeway, with Tavarez walking ahead and Shavers carrying the bag of money. Once in front of a particular apartment that Tavarez claimed was his, Tavarez pulled out a gun, stated, "you think it's a game," and demanded that Ridley turn over his phone, watch, and everything in his pocket. Asmelash took the bag of money out of Shavers's hand and "vanished." Ridley threw his watch, phone, and the cigarette pack that had been in his pocket on the ground. Tavarez then shot Ridley multiple times, with Ridley returning fire as he fell to the ground.

Aspects of Shavers's testimony were corroborated by video surveillance recordings from a parking lot outside the store, two gas stations, and the apartment complex, which were played for the jury, although none of these recordings showed Ridley's encounter with Tavarez. The surveillance video captured Ridley arriving at the store on the day of the shooting and showed him carrying a small, white, drawstring bag and cell phone and wearing a watch, and the video showed him still carrying the bag and cell phone and wearing a watch after he reemerged from the store.

A tag for the white Mercedes showed that the car was registered to Jeanmarie Gonzalez, but Tavarez recently had been stopped by police driving that car, and his connection to Gonzalez was evidenced by social media. According to a detective, Shavers identified Tavarez in a photo lineup.

A Taurus handgun found underneath Ridley's body contained 14 rounds, out of a maximum capacity of 15. One shell casing and one bullet fragment collected at the scene of the shooting were fired from that gun. A pack of cigarettes was found at the scene, but

Ridley's cell phone, watch, and bag of money never were recovered by police.

The medical examiner identified the cause of death as gunshot wounds to the torso and extremities. The evidence showed that one of Ridley's wounds, a gunshot wound to the foot, was self-inflicted.

Text messages between Tavarez and Gonzalez showed that Gonzales texted Tavarez the day before the shooting saying she was concerned about paying rent, and he texted her hours after the shooting, telling her not to "worry about rent."

Tavarez did not testify, although he gave a pre-trial statement that was played for the jury, telling officers that he was supposed to sell marijuana to Ridley on behalf of "Rafael," so he could make his rent, and that he was not trying to rob Ridley. Tavarez stated that Ridley pulled his gun and shot at Tavarez first, and that Tavarez shot Ridley in self-defense.[4] His lawyer maintained a justification

---

[4] It is not entirely clear which portions of the statement contained in the appellate record were played for the jury; the trial court had ordered the statement to be redacted pursuant to *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968), but redaction problems led to Asmelash's case

6

defense at trial.

1.    Tavarez argues that counsel was ineffective for failing to object to testimony by a detective repeating statements by Shavers, thereby "bolstering" her testimony. We disagree.

Detective Corey Van Alen testified at trial about various matters. Although by that point Shavers already had testified at length, a significant portion of Detective Van Alen's testimony involved relaying what Shavers told him about events leading up the shooting, including that when Tavarez stopped in front of a particular apartment door, he turned around with a gun. Trial counsel did not object until the detective was asked what Shavers said was in the bag that she was carrying as she walked down the apartment complex breezeway, and the detective answered that Shavers said it contained $26,000 in cash. Tavarez's counsel

_____

being severed from Tavarez's case midtrial. To the extent there is any ambiguity in the record about what parts of Tavarez's statement were played for the jury, that does not help Tavarez, who bears the burden of establishing that counsel was constitutionally ineffective. See *Payne*, 314 Ga. at 328-329 (3); see also *Rodriguez v. State*, 295 Ga. 362, 368 (2) (b) n.11 (761 SE2d 19) (2014) (any ambiguity in the record does not help the appellant, who bears the burden of showing error in the record on appeal).

7

objected on hearsay grounds, and Asmelash's counsel interjected that the testimony amounted to bolstering, an objection with which Tavarez's counsel agreed. The State responded that this was "all part of the course of the investigation which is necessary to complete the story for the jury." The trial court stated that it would overrule the objection "at this time" but instructed the prosecutor to "narrowly focus on what you want him to testify to." As the prosecutor continued to have the detective narrate what happened just prior to the shooting (albeit without saying explicitly that Shavers was the source of his knowledge), Asmelash's counsel stated that she had the "same objection," an unrecorded bench conference was conducted, and the trial court sustained the objection. Asmelash's counsel raised a similar objection a few questions later, and the objection again was sustained after an off-the-record bench conference, with Tavarez's counsel noting on the record that he had joined in the objection. The trial court sustained an objection to similar testimony soon after without Asmelash's counsel even stating the basis for her objection.

To prove his claim of ineffective assistance of counsel, Tavarez must show that counsel's performance was deficient and that counsel's deficient performance prejudiced Tavarez's defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "If [a defendant] fails to establish one of these two prongs, we need not examine the other." *Payne v. State*, 314 Ga. 322, 328 (3) (877 SE2d 202) (2022) (citation and punctuation omitted). "To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." Id. at 328-329 (3) (citation omitted). "To establish prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 329 (3) (citation and punctuation omitted). "When evaluating whether an appellant has established prejudice under *Strickland*, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done rather than in the

light most favorable to the verdict." *Harmon v. State*, __ Ga. __, __ (3) (__ SE2d __) (Case No. S24A0158, decided June 11, 2024) (citations and punctuation omitted).

Tavarez argues on appeal that the failure to object sooner to the detective's testimony relaying what Shavers told him constituted ineffective assistance of counsel because the testimony was hearsay and constituted "improper bolstering" of Shavers's testimony. But even assuming that counsel performed deficiently in failing to object to the detective's testimony about what Shavers told him, Tavarez has not shown that he was prejudiced by this failure. Even without the detective's testimony about what Shavers told him, the evidence against Tavarez still was very strong. Shavers testified that Tavarez pulled out a gun once they reached a particular apartment and demanded Ridley turn over his valuables, while an accomplice grabbed the bag of money that Shavers had been holding. Shavers testified that Ridley did not shoot at Tavarez first, as Tavarez claimed, but rather returned fire after he had fallen to the ground. Shavers's story was consistent with surveillance video

10

recordings showing Ridley with a small drawstring bag, cell phone, and watch earlier in the day. Moreover, Tavarez admitted in his statement played for the jury that he shot Ridley.[5] The evidence that Ridley had a cell phone, watch, and bag prior to the shooting that disappeared before police responded, as well as the evidence of Tavarez's communication to Gonzalez shortly after the shooting (from which the jury could infer that Tavarez had found a solution to her financial concerns), supported Shavers's story that Tavarez attempted to rob Ridley and undermined Tavarez's story that he was merely trying to sell Ridley some marijuana.[6]

---

[5] Even under Tavarez's version of events, he could not justify his shooting of Ridley by claiming self-defense, given that the shooting happened while he was admittedly attempting to sell Ridley marijuana, which is a felony. See OCGA § 16-3-21 (b) (2) (a person is not justified in using force against another in self-defense if the person using force is committing, attempting to commit, or fleeing after the commission of a felony); OCGA § 16-13-30 (j) (selling marijuana is a felony). But putting aside whether the jury charge on criminal solicitation alerted the jury that Tavarez's putative attempt to sell drugs to Ridley would amount to a felony, it does not appear that the jury was instructed that deadly force is not justified when used by someone committing or attempting to commit a felony. Therefore, we do not rely on this rule in concluding that counsel's failure to object to the testimony at issue did not prejudice Tavarez's defense.

[6] Indeed, Tavarez acknowledged in his statement to police that Ridley's bag was taken during the shooting, although he disclaimed responsibility for the theft.

11

Tavarez argues that in evaluating the harmful effect of a trial court error in admitting hearsay that is consistent with the speaker's trial testimony, but not properly admitted as prior consistent statements within the meaning of the Evidence Code, we "cannot look to [the witness's] improperly bolstered testimony to show that the bolstering error was harmless." *Cowart v. State*, 294 Ga. 333, 341-342 (4) (b) (751 SE2d 399) (2013) (citation and punctuation omitted). But as we recently explained, that rule does not apply where, as here, the claim at issue is one of ineffective assistance of counsel and the applicable standard is whether "the defendant has established a reasonable probability that the result of the trial would have been different absent counsel's deficient performance." *Harmon v. State*, __ Ga. at __ (3) n.7 (citation and punctuation omitted). Although the testimony in question by Detective Van Alen may have added some weight to Shavers's testimony in suggesting to the jury that Shavers's testimony was consistent with her prior statements, he did not bolster her testimony in the sense that he directly addressed her credibility in

12

violation of OCGA § 24-6-620. See *Richardson v. State*, __ Ga. __, __ (2) (a) (899 SE2d 685) (2024) ("When a witness's statement does not directly address the credibility of another witness . . . , there is no improper bolstering." (citation and punctuation omitted)). And even if Tavarez's counsel had successfully objected to the detective's testimony recounting what Shavers had told him, the jury still would have heard Shavers's live testimony, as well as Tavarez's own statement admitting to the shooting, and the other evidence of Tavarez's guilt. See *Harmon*, __ Ga. at __ (3) n.7. Given this evidence, Tavarez has not established a reasonable probability of a different result absent trial counsel's assumed deficient performance in not objecting to the detective's testimony about what Shavers told police. See id. at __ (3); *Henderson v. State*, 304 Ga. 733, 738 (3) (d) (822 SE2d 228) (2018) (concluding that defendant failed to establish *Strickland* prejudice from counsel's failure to object to hearsay based on both strength of evidence of guilt and because hearsay was merely cumulative of trial testimony of declarant).

2.   Tavarez's only other enumeration of error is that the trial

13

court erred by conducting the trial while Tavarez's legs were shackled. We conclude that Tavarez has not shown reversible error on this point.

The record shows that Tavarez's trial was conducted with both Tavarez and his co-defendant, Asmelash, in leg restraints. The only discussion of this in the trial transcript occurred in the middle of the trial, with no obvious prompting, when the trial court stated to the two defendants outside of the presence of the jury: "[T]he deputy has put leg restraints on you. This is just for safety measures because you're going to remain seated the whole time, so you may want to slide closer to the table so that those cannot be seen. This is just for — to accommodate the Court." At the motion for new trial hearing, Tavarez's appellate counsel raised this issue, and the trial court responded that the use of leg shackles during the trial of criminal cases was a standard safety protocol in his particular courtroom, noting the use of table skirts to keep the restraints hidden from jurors' view.

Although his briefing on this enumeration of error is limited,

Tavarez essentially argues that the trial court erred in restraining Tavarez's legs because, although the shackles may have been hidden when Tavarez was seated at counsel table, he had to choose between forgoing participation in bench conferences or being seen by the jury in restraints. There is no record of Tavarez having objected to the shackling at trial, which leaves nothing for this Court to review as far as the shackling itself. See *Munn v. State*, 313 Ga. 716, 723-724 (4) (873 SE2d 166) (2022) (holding that because counsel did not make a specific objection to shackling of the defendant at trial, "this issue is not preserved for review, and this enumeration of error fails").[7] Tavarez's argument that the trial court erred by conducting

_____

[7] Tavarez's failure to object means that we do not consider whether the shackling of his legs without any individualized determination as to its necessity violated any of Tavarez's constitutional rights. That said, we remind trial courts that a defendant's Fifth and Fourteenth Amendment due process rights prohibit the use of physical restraints, particularly those visible to the jury, absent a trial court determination that they are justified by a state interest specific to a particular trial. See *Deck v. Missouri*, 544 U.S. 622, 626-629 (125 SCt 2007, 161 LE2d 953) (2005); see also *Hill v. State*, 308 Ga. 638, 644-648 (2) (842 SE2d 853) (2020) (reversing conviction on ground that trial court required defendant to be visibly shackled for the duration of his trial without making a record that it considered the impact of visible restraints upon the constitutional rights of criminal defendant, whether those security measures were appropriate when that defendant elected to represent himself

15

bench conferences outside of his presence cannot be disposed of so simply, however.

Although Tavarez is not clear whether he brings his right-to-be-present claim under the federal or state constitution, both guarantee criminal defendants the right to be present at certain proceedings against them. See *United States v. Gagnon*, 470 U.S. 522, 526 (105 SCt 1482, 84 LE2d 486) (1985) ("The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." (citation omitted)); *Pennie v. State*, 271 Ga. 419, 421 (2) (520 SE2d 448) (1999) (citing Ga. Const. of 1983, Art. I, Sec. I, Para. XII for right to be present claim). But this right does

---

at trial, and whether less visible alternatives could achieve the required level of security); compare *Potts v. State*, 259 Ga. 96, 100 (3) (376 SE2d 851) (1989) (no error in shackling defendant's legs where considerable record evidence supported the trial court's finding that extra security measures with particular defendant were justified, and steps were taken to shield shackles from view of jury).

not encompass *all* aspects of a criminal trial. The United States Supreme Court has said the federal due process right of presence "is not guaranteed when presence would be useless, or the benefit but a shadow[.]" *Kentucky v. Stincer*, 482 U.S. 730, 745 (107 SCt 2658, 96 LE2d 631) (1987) (citation and punctuation omitted). Rather, federal due process "requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence," such that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." Id. (citation and punctuation omitted). Similarly, the Georgia constitutional right to be present attaches where "the defendant's presence would contribute to the fairness of the procedure." *Nesby*, 310 Ga. at 758 (2) (citation and punctuation omitted). In particular, we have said that a defendant's absence from bench conferences ordinarily does not violate his right to be present under the Georgia Constitution; "[b]ench conferences pertaining to purely legal issues, such as the admissibility of evidence, ordinarily

17

do not implicate the right to be present." Id. at 759 (2) (citation and punctuation omitted); see also *United States v. Vasquez*, 732 F2d 846, 848 (11th Cir. 1984) ("The [federal] right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed."); but see *Heywood v. State*, 292 Ga. 771, 774-775 (3) (743 SE2d 12) (2013) (concluding that, although defendant was entitled to be present at particular bench conference about whether to replace prospective jurors, he acquiesced in his counsel's waiver of his right).[8]

---

[8] In support of his right-to-be-present claim, Tavarez cites only Georgia state appellate decisions, although at least one of those cases references both federal and state case law in its analysis of a right-to-be-present claim. We have said that this Court's interpretation of the Georgia right to be present "has always been in accord" with the United States Supreme Court's recognition of the federal right. *Smith v. State*, 298 Ga. 406, 409 (2) (782 SE2d 269) (2016) (citation and punctuation omitted). "Of course, the United States Supreme Court's construction of a federal constitutional provision does not bind our construction of a similar Georgia constitutional provision, which must be construed independently in the light of the Georgia provision's text, context, and history." *Rockdale County v. U.S. Enterprises, Inc.*, 312 Ga. 752, 761 (3) n.10 (865 SE2d 135) (2021). Here, the federal and state rights to be present are rooted in wholly different provisions. But Tavarez makes no argument that the

18

Here, Tavarez has pointed to no particular bench conference that he contends he was excluded from in violation of his right to be present, let alone made a record as to what was discussed at any bench conference conducted in his absence to show that the discussion was of the sort that implicated his right to be present. Mere speculation about what happened at a bench conference cannot serve as the basis for the grant of a new trial on the ground that the defendant's right to be present was violated. See *Nesby*, 310 Ga. at 759 (2). And Tavarez does not even attempt to speculate as to what occurred at the bench conferences that he now contends he had the right to attend. Even assuming that shackling amounted to a constructive exclusion of Tavarez from bench conferences, Tavarez's failure to make a showing that any bench conference from which he was excluded implicated his right to be present precludes success on a right-to-be-present claim. See *Reed v. State*, 314 Ga. 534, 544 (3) (a) (ii), 545 (3) (b) (878 SE2d 217) (2022) (no reversible error based

Fourteenth Amendment affords him a right to be present that is materially broader than that afforded him by Article I, Section I, Paragraph XII of the Georgia Constitution.

19

on right-to-be-present claim as to certain bench conferences where defendant made no effort on appeal to address conferences individually to contest the trial court's finding that the conferences involved legal, procedural, or logistical matters such that they did not implicate his right to be present); *Prickett v. State*, 314 Ga. 435, 442-443 (2) (877 SE2d 573) (2022) (defendant failed to show his constitutional right to be present was violated where he made no attempt on appeal to address any particular bench conference at issue or to contest as to any individual conference the trial court's findings that that the bench conferences involved legal, procedural, or logistical matters).[9]

*Judgment affirmed. All the Justices concur.*

---

[9] Because Tavarez has not shown that his right to be present was even implicated, we need not consider the trial court's basis for rejecting his claim, that Tavarez acquiesced in any inability to participate in bench conferences. We also need not reach Tavarez's argument on appeal that conducting bench conferences outside his presence is a "structural error" such that he need not show prejudice in order to obtain reversal of his conviction, an argument that presumes that a violation of the right to be present occurred.

LAGRUA, Justice, concurring.

I join in full the Majority Opinion but write to caution trial courts. "It is well established that no person should be tried while shackled except as a last resort[,]" and, should a trial court utilize shackles, the trial court must make "case-specific and individualized findings to support its initial decision. . . ." *Hill v. State*, 308 Ga. 638, 644-645 (2) (a) (842 SE2d 853) (2020) (citation and punctuation omitted). However, if the trial court made such findings here, they are not in the record. And, at the motion for new trial hearing, the trial court's explanation for the use of shackles made no reference to the specific circumstances of Tavarez and Asmelashs' trial:

> And it was the policy of this Court, once the jury has been selected, to have the individuals have those leg shackles. And it's primarily so the Court of Appeals [and] Supreme Court will know, will make everyone safe. And we've had minimal incidents, at least in my courtroom, whereas other courtrooms do have other problems, I haven't had it. . . . And so it's for safety, just to make everybody safe. . . . But I'll just let the Court of Appeals know it's really about safety of the people in the courtroom at that point in time. And I'm just expressing my opinion. I think it's important for me to have people safe when they are doing their jobs. But everybody['s] rights will be protected.

21

Case law makes clear that shackling should not be a general "policy" as described by the trial court here. See *Hill*, 308 Ga. at 644 (2) (a); see also *Deck v. Missouri*, 544 U.S. 622, 626 (II) (125 SCt 2007, 161 LE2d 953) (2005) ("The law has long forbidden routine use of visible shackles during the guilt phase; it permits a State to shackle a criminal defendant only in the presence of a special need."). The fact that a defendant, presumed to be innocent, is charged with a violent offense is — in and of itself — insufficient to justify such restraint. And if a trial court nonetheless decides to shackle a defendant, "the record must provide a basis for [its security] determinations." *Hill*, 308 Ga. at 644 (2) (a).