308 Ga. 296
FINAL COPY

S19A1410. THE STATE v. REMY.

NAHMIAS, Presiding Justice.

The State appeals the grant of a motion for immunity and dismissal of its criminal prosecution against appellee Paul Junior Remy. In March 2018, Remy was tried for murder and other crimes related to the shooting death of Jenario Sharone Stark.[1] After the jury had deliberated for a full day without reaching a verdict, the trial court declared a mistrial. Four days later, Remy filed a motion for immunity from prosecution under OCGA § 16-3-24.2, arguing that he shot Stark in defense of himself and others, see OCGA § 16-3-21 (a). Before the hearing on the immunity motion occurred, the State re-indicted Remy for the same incident, omitting a count of

---

[1] On July 29, 2016, a Fulton County grand jury indicted Remy on charges of malice murder, felony murder based on possession of a firearm by a convicted felon, felony murder based on aggravated assault, two counts of aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.

aggravated assault and adding a second charge of possession of a firearm by a convicted felon.[2] After the hearing, the trial court granted Remy immunity. The court then dismissed the new indictment on the ground that it was issued after a court-ordered deadline for the filing of new indictments.

On appeal, the State raises three alleged errors. First, the State contends that Remy was not entitled to file a motion for immunity after a mistrial. Second, the State argues that even if an immunity motion may be considered after the declaration of a mistrial, Remy was not entitled to immunity on the merits. Third, the State asserts the trial court erred when it dismissed the second indictment. For the reasons explained below, we affirm the trial court's judgment in part, reverse it in part, vacate it in part, and remand the case for further proceedings.

---

[2] A grand jury returned the second indictment on April 27, 2018. Counts 6 and 7 of that indictment both alleged a charge of possession of a firearm by a convicted felon. Count 6 was listed as a predicate felony for one of the felony murder counts, while Count 7 was described as "alleg[ing] a separate and distinct offense from that alleged in Count 6 of this Indictment." The counts were otherwise identical.

1. Prior to 2014, a felon in possession of a firearm generally could not assert a claim for immunity from prosecution under OCGA § 16-3-24.2 for crimes involving the use of deadly force. See *State v. Burks*, 285 Ga. 781, 782 (684 SE2d 269) (2009) (holding that the former version of OCGA § 16-3-24.2 did not apply if the defendant was unlawfully carrying a firearm). The former version of § 16-3-24.2 prohibited a person from seeking immunity predicated on justification if that person carried or possessed a weapon in violation of "Part 2 or 3 of Article 4 of Chapter 11 of [Title 16]," Part 3 of which includes OCGA § 16-11-131, which in turn prohibits felons from possessing firearms.[3]

In 2014, however, the General Assembly amended OCGA § 16-3-24.2 to eliminate the language referencing a violation of Part 3,

---

[3] From 2006 to 2014, OCGA § 16-3-24.2 said in full:

A person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 or 3 of Article 4 of Chapter 11 of this title.

thereby allowing defendants charged with violating OCGA § 16-11-131 to raise a claim of immunity. See Ga. L. 2014, p. 599, § 1-3.[4] Thus, at the times pertinent to this case, felons charged with possession of a firearm in violation of OCGA § 16-11-131 were no longer categorically precluded by the final clause of OCGA § 16-3-24.2 from seeking immunity from criminal prosecution under that statute.

---

[4] OCGA § 16-3-24.2 now says:

> A person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 of Article 4 of Chapter 11 of this title.

OCGA § 16-3-21 says in pertinent part:

> (a) A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23, a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.
>
> (b) A person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he: . . . (2) Is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony[.]

2. The State argues, however, that a motion for immunity under OCGA § 16-3-24.2 must be made before trial and, therefore, was unavailable to Remy because his case went through a full trial and was submitted to a jury before the court declared a mistrial. Although nothing in the language of OCGA § 16-3-24.2 requires an immunity motion to be filed pretrial, such motions are generally made before trial because a grant of immunity terminates a criminal prosecution. And we have held that a trial court errs when it refuses to consider before trial an immunity motion that was filed before trial. See *Fair v. State*, 284 Ga. 165, 166 (664 SE2d 227) (2008).

Even assuming that motions for immunity under OCGA § 16-3-24.2 must be made before trial, however, Remy is now back in a pretrial position. We recently explained that a defendant may file a motion for immunity under OCGA § 16-3-24.2 after the grant of a new trial because when a new trial is granted, it is "'as though no trial had been had.'" *State v. Hamilton*, 308 Ga. __ (__ SE2d __) (2020) (quoting OCGA § 5-5-48) (emphasis omitted). The declaration of the mistrial put Remy in the same situation: "a mistrial . . . is

equivalent to no trial at all, and the case stands, when the mistrial is declared, as though it had never been entered upon." *Augusta Ry. Co. v. Tennant*, 98 Ga. 156, 157 (26 SE 481) (1895). See also *Hayes v. State*, 58 Ga. 35, 45-46 (1877) (holding that the State is not required to re-indict the defendant after a mistrial is declared, citing a case holding that re-indictment is not required after the grant of a new trial); *Beecher v. State*, 240 Ga. App. 457, 460 (523 SE2d 54) (1999) (holding that after a mistrial, the State was required to give notice of its intention to use prior convictions again before the second trial, citing a case that said such notice was required again after the defendant's convictions were reversed on appeal).

Accordingly, Remy was entitled to file a motion for immunity under OCGA § 16-3-24.2 after the trial court declared a mistrial.

3. The State contends next that the trial court erred when it concluded that Remy was entitled to immunity on the merits. To succeed on his immunity motion under OCGA § 16-3-24.2, Remy was required to show by a preponderance of the evidence that he acted in defense of himself or others. See *Goodson v. State*, 305 Ga. 246,

251 (824 SE2d 371) (2019). On appeal of an order granting or denying immunity, "we review the evidence in the light most favorable to the trial court's ruling, and we accept the trial court's findings with regard to questions of fact and credibility if there is any evidence to support them." *State v. Bunn*, 288 Ga. 20, 23 (701 SE2d 138) (2010) (citation and punctuation omitted). See also *Mullins v. State*, 287 Ga. 302, 302 (695 SE2d 621) (2010).

(a) Viewed in the light most favorable to upholding the trial court's ruling, the evidence shows the following.[5] Stark and his girlfriend Ashley Lucas lived with Lucas's cousin, Chyna Tshitambwe, and Tshitambwe's toddler daughter in Tshitambwe's small studio apartment. Lucas testified that, on the morning of the incident, Stark dragged her by her hair and that the two of them engaged in a verbal and physical altercation. Tshitambwe testified that she saw Stark choke Lucas and punch her in the face. Wanting

---

[5] The trial court relied on the trial transcripts as the evidence for its immunity decision. The State did not object to the trial court's reliance on the transcripts for this purpose. Compare *Hamilton*, 308 Ga. at 129 (addressing the State's hearsay objection to the trial court's reliance on trial testimony in making a subsequent immunity decision under OCGA § 16-3-24.2).

to get her child away from the altercation, Tshitambwe called two female friends, Jaimee Harris and Mary Shaw, to come over and take her and her daughter away from the apartment.

Harris and Shaw arrived along with two male companions, Alveo Seabrooks and Remy. Harris and Shaw entered Tshitambwe's apartment first. Shaw told Stark that he needed to get his belongings and leave. When Stark saw Seabrooks and Remy enter the apartment, he said, "Who are these b**ch ass n**gas?" Remy testified that he noticed a large bulge in Stark's pocket, which he believed to be a gun. Lucas testified that Stark was armed that morning with a 9mm handgun that he usually kept in his pocket or in a side holster.

Shaw and Remy testified that Stark threatened to beat Shaw. Remy testified that when he heard this threat and saw Stark moving toward Shaw and Harris, who was standing next to Shaw, he moved between them and punched Stark because he believed Stark meant to harm the women. Multiple witnesses testified that Stark and Remy began to "tussle." Remy testified that, during the struggle, he

put his hand on Stark's pocket and was able to confirm Stark had a gun.

Witnesses testified that the two men fell over a sofa and onto the floor during their struggle, with Remy ending up on top of Stark. Remy testified he pulled his gun out and pointed it at Stark's chest, verbally demanding that Stark give up his gun. Remy testified that, rather than surrendering, Stark kept trying to pull out his gun, yelling that he had "a license to kill." Remy testified that he believed Stark was psychotic because Stark would not give up his gun even though Remy was armed and had the better of him. Remy then put his gun away and asked for Seabrooks' assistance in disarming Stark, so Seabrooks entered the melee. Lucas testified that she and Harris also tried to get Stark's gun, but that she started fighting Harris after Harris punched Stark in the face.

Eventually, all the women left the apartment. Remy and Seabrooks continued to struggle with Stark, but they were unable to disarm him. At some point, the men separated. Remy testified that Stark reached for the gun in his pocket, but it caught on the fabric

of his pants. In that brief moment, Remy pulled out his gun and fired once because he believed Stark was going to shoot him. Remy and Seabrooks then fled. When Lucas reentered the apartment, Stark was lying wounded on the floor. Lucas testified that she rolled Stark over and found his gun on the floor underneath him. She testified that the gun's safety was off.

Based on this evidence, the trial court was authorized to find that Remy showed by a preponderance of the evidence that he shot Stark in self-defense. See *State v. Green*, 289 Ga. 802, 804 (716 SE2d 194) (2011) (affirming grant of immunity where decedent, who was "totally irrational," chose to attack even while aware that the defendant was armed with a knife).

(b) Nevertheless, the State contends that Remy's status as a convicted felon precluded the trial court's finding of immunity. We disagree. This Court recently held that, when read together, OCGA §§ 16-3-21 and 16-11-138[6] create the following rule of law:

---

[6] In addition to amending OCGA § 16-3-24.2 in 2014, the General Assembly enacted OCGA § 16-11-138, which provides that "[d]efense of self or

A person is justified in threatening or using force against another, or in engaging in conduct that is otherwise prohibited under Title 16, Chapter 11, Article 4, Part 3 of the Code, when and to the extent that he or she reasonably believes that such threat or force or conduct otherwise prohibited under Title 16, Chapter 11, Article 4, Part 3 is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force . . . .

*Johnson v. State*, 308 Ga. __, __ (__ SE2d __) (2020) (emphasis omitted). Accordingly, "if [Remy's] possession of a firearm at the time of the shooting was justified under the rule of law produced by the combination of OCGA §§ 16-3-21 and 16-11-138, then it cannot be said that [Remy] was 'committing . . . a felony' when he shot [Stark], and the preclusive bar of OCGA § 16-3-21 (b) (2) would not apply." *Johnson*, 308 Ga. at ___.

However, Remy may not be completely immunized from prosecution as a felon in possession of a firearm in violation of OCGA § 16-11-131, if he possessed a firearm outside the period of time when there was a necessity to defend himself or another person

---

others, as contemplated by and provided for under Article 2 of Chapter 3 of [Title 16], shall be an absolute defense to any violation under this part." OCGA § 16-11-131 constitutes a violation under that part.

pursuant to OCGA § 16-3-21. See *Johnson*, 308 Ga. at __ n.7 ("If a felon . . . came into possession of a firearm prior to any necessity arising and continued to have possession after any necessity had dissipated, his possession both before and after the time of necessity would be felonious and prosecutable."). The trial court needs to consider this issue in light of the evidence and our rulings in this opinion and *Johnson*. Accordingly, regarding the original indictment, the judgment is affirmed as to all of the counts except the charge of being a felon in possession of a firearm, which is vacated, and the case is remanded for the trial court to conduct further proceedings consistent with this opinion.

4. As noted above, the State reindicted Remy on April 27, 2018, before the trial court ruled on his immunity motion. The trial court dismissed the new indictment sua sponte on the ground that it violated an order in the original case prohibiting re-indictment after the final plea date of December 13, 2016, which was over a year before Remy's trial began. The State and Remy agree that the trial court was not authorized to dismiss the second indictment on the

basis asserted. A trial court may dismiss an indictment sua sponte only in limited circumstances. See *State v. Bachan*, 321 Ga. App. 712, 714 (742 SE2d 526) (2013). For example, a court may dismiss an indictment when there is a defect on its face and may dismiss criminal charges without prejudice for want of prosecution. See id. But a trial court cannot dismiss criminal charges without a proper legal basis. See *State v. Kelley*, 298 Ga. 527, 530 (783 SE2d 124) (2016). Indeed, we have held that even this Court's authority to promulgate a unified appeal procedure for death penalty cases does not "give [us] the power to abrogate or interfere with an otherwise-valid statutory enactment, such as the statutory procedure by which prosecutors procure indictments and conduct criminal prosecutions through them." *Edwards v. State*, 281 Ga. 108, 110 (636 SE2d 508) (2006).

The trial court did not cite any authority, and we are unaware of any, allowing a trial court to dismiss a subsequent indictment because it was not filed by a date set forth in a trial court order pertaining to the original case. Because the trial court failed to

provide a legal basis for dismissing the charges in the second indictment, that ruling is reversed. We do not address whether other grounds for dismissing the indictment exist.

*Judgment affirmed in part, reversed in part, and vacated in part, and case remanded. Melton, C. J., and Blackwell, Boggs, Peterson, Warren, Bethel, and Ellington, JJ., concur.*

DECIDED MARCH 13, 2020.
Murder. Fulton Superior Court. Before Judge Downs.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.
*Brandon A. Bullard*, for appellee.