320 Ga. 721
FINAL COPY

S24A1369. BRUNDAGE v. THE STATE.

PETERSON, Presiding Justice.

Rondriques Brundage appeals his convictions for felony murder and possession of a firearm during the commission of a felony for the shooting death of Rodrell Matthews.[1] He raises four

---

[1] Matthews was killed on the night of July 10, 2018. On April 19, 2022, a DeKalb County grand jury returned an indictment charging Brundage with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of a firearm by a convicted felon (Count 5), possession of a firearm during the commission of a felony (Count 6), and concealing the death of another (Count 7). At a May 2022 trial, a jury found Brundage not guilty of Counts 1, 2, and 4, but guilty of Counts 3, 5, 6, and 7. The trial court sentenced Brundage to life without the possibility of parole on felony murder predicated on possession of a firearm by a convicted felon (Count 3), plus consecutive prison terms of ten years for possession of a firearm by a convicted felon (Count 5), five years for possession of a firearm during the commission of a felony (Count 6), and ten years for concealing the death of another (Count 7). On June 2, 2022, Brundage filed a motion for new trial, which was amended on November 15, 2023, and January 12, 2024. On April 29, 2024, following a hearing, the trial court denied the motion for new trial, except that it agreed with Brundage that Count 5 (possession of a firearm by a convicted felon) should merge into Count 3 (felony murder predicated thereon) and amended the sentence to that effect (without entering a new final disposition form into the record). Brundage filed a timely notice of appeal, and the case was docketed to this Court's August 2024 term and submitted for a decision on the briefs.

enumerations of error, including that trial counsel was ineffective for failing to object to the State's explanation of self-defense as applied to felony murder predicated on felon-in-possession. Brundage's defense focused entirely on self-defense, and the State's explanation of how self-defense law applied to this case was profoundly wrong. Counsel's failure to object was objectively unreasonable, and it is reasonably probable that an objection would have led to a different outcome as to the charges of felony murder predicated on possession of a firearm by a convicted felon and possession of a firearm during the commission of a felony. Accordingly, we reverse the convictions entered on those counts, although the State may retry Brundage on those counts. The count of possession of a firearm by a convicted felon unmerges with reversal of the conviction on the felony murder count, and we leave it for the trial court to consider in the first instance on remand any challenges to a conviction entered on that count. We affirm Brundage's conviction for concealing the death of another, which he does not challenge on appeal.

1.   *Background.*

The undisputed trial evidence shows that Brundage shot Matthews on the night of July 10, 2018, at a DeKalb County duplex house where Elwood Dugue lived. Police found Matthews's body in a river several days later, with cinderblocks tied to his waist and feet. Brundage was later arrested in Florida. Brundage, a convicted felon, was charged with malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), felony murder predicated on possession of a firearm by a convicted felon (Count 3), aggravated assault (Count 4), possession of a firearm by a convicted felon (Count 5), possession of a firearm during the commission of a felony (Count 6), and concealing the death of another (Count 7).

At trial, the State's primary eyewitness to the shooting was Brundage's cousin, Antavis Ivey, who testified that he did not know who shot Matthews. Ivey testified that Matthews stormed into the duplex with a gun in his hand on the night of the shooting, upset about something involving a prostitute, and was "making a lot of commotion." Ivey testified that Matthews cocked the gun and moved

3

it around "like a person talking with their hands." He also testified that Brundage carried his gun as regularly as he carries a cell phone. After Ivey testified, the State admitted and played for the jury Ivey's prior statement to police, in which Ivey had stated that although Matthews was "heated" and came into the house with a gun that he cocked, Ivey did not see Matthews point the gun before Brundage shot Matthews from behind. Ivey told the police that Brundage kept "the gun" as the two discussed what to do with Matthews's body.[2]

The jury also heard additional evidence — in the form of Ivey's prior statement to police, trial testimony both from him and from Brundage's girlfriend, and a 911 call from an acquaintance of Brundage — that Brundage was involved in moving and disposing of Matthews's body, before fleeing to Florida with his girlfriend. All the while, Ivey said, Brundage possessed a firearm.

Brundage raised a justification defense at trial. Dugue, a

---

[2] Ivey stated in his pretrial interview that Brundage still had "the gun" in his hand at that point. Later in that interview, he stated that Brundage took Matthews's gun.

resident of the duplex where Matthews was shot, testified for the defense that, on the night Matthews was shot, Matthews entered Dugue's home angry and intoxicated, carrying an automatic pistol with a long clip attached to it. Dugue testified that Brundage shot Matthews after Matthews cocked the pistol while facing Dugue and Brundage, such that Dugue feared for his life.

Brundage testified in his own defense, saying that he picked up a gun from the ground and shot Matthews because he was convinced Matthews would shoot him or others. Brundage testified that, although he drove Matthews's body away from the scene of the shooting at the insistence of Ivey and another man, the others carried the body into some bushes while he waited in the vehicle, and he was not involved in putting the body into the river. Brundage testified that he did not own a firearm and that Ivey was lying about Brundage carrying a gun as regularly as a cell phone.

The jury found Brundage not guilty of malice murder, aggravated assault, and felony murder predicated on aggravated assault, but guilty of felony murder predicated on felon-in-

possession, concealing the death of another, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. The trial court sentenced Brundage to life in prison without the possibility of parole for felony murder, ten years consecutive for possession of a firearm by a convicted felon, five years consecutive for possession of a firearm during the commission of a felony, and ten years consecutive for concealing the death of another. The sentence was later reduced on Brundage's motion for new trial, with the trial court agreeing with the defense that the felon-in-possession count merged with the felony murder count on which Brundage was convicted.

This appeal followed, with Brundage challenging his convictions for felony murder and possession of a firearm during the commission of a felony. Brundage argues that his trial counsel was ineffective for (1) failing to object to the State's misleading explanation of self-defense as applied to felony murder predicated on possession of a firearm by a convicted felon; and (2) failing to request a jury charge on the defense of habitation. He also argues

that the trial court committed plain error (1) when it did not charge the jury that justification was an "absolute defense" to felony murder predicated on felon-in-possession and (2) when it did not reference the defense of others in its charge on the application of a justification defense to the felon-in-possession charge.

2.   *Trial counsel was ineffective for failing to object to the State's incorrect explanation of self-defense.*

We agree with Brundage that his trial counsel was deficient for failing to object to the State's incorrect explanation of self-defense as applied to felony murder predicated on possession of a firearm by a convicted felon. Because counsel's deficiency prejudiced Brundage, we reverse the affected convictions.

During closing argument, the State acknowledged that there are "limited circumstances" when a convicted felon "can" "have a weapon." The State generally previewed the trial court's instructions on that point by telling the jury that "Georgia self-defense law affords a justification defense for otherwise unlawful possession or carrying of a firearm when and to the extent that the accused reasonably believes that such possession is necessary to

7

defend himself[,]" adding that "when applied to the possession of a firearm by a convicted felon, it would justify possession only for the duration of the necessity." It is the prosecutor's subsequent attempt to illustrate this limitation that is the basis for Brundage's ineffective assistance claim:

> So let me explain it like this. Say you're in a house. You got a dad. You got a son. Let's say son is a convicted felon, cannot possess weapons. Dad can. Dad has a gun in his bedroom away from his son. Middle of the night, 4:00 a.m., folks come barging in with weapons. Son wakes up. Son runs to Dad's room, gets the guns, shoots, drops the weapon. That very small window, good, self-defense; but if you have that gun before or if you have it after, you are not justified. And what do we know? [Ivey] said he carries his gun like a cell phone. We all have our cell phone on us all the time; and that's what his friend said, he carries his gun like a cell phone. So what can we infer? When he went over to Chupp Road, he had that gun on him. This story that there just happened to be a revolver laying on the floor; the stars have just aligned; and, oh, my gosh, there's a gun; let me pick it up; let me shoot. No. Remember credibility and the improbability of the story, that's one of those situations; and we know that then he took [Matthews]'s gun. So remember that small window, there has to be a necessity. So even after he shoots [Matthews], he still has his gun, because [Ivey] says it. He still has his gun, and he has [Matthews]'s gun. So he is not justified. Self-defense does not apply if you are outside that very, very brief window before or after. You are a convicted felon, and it is unlawful for you to possess that firearm,

so you do not get self-defense. You don't get that benefit when you come in a residence with a gun. You shouldn't have had it anyway.

Defense counsel did not object to these statements. After closing arguments, the trial court instructed the jury as follows on the relationship between justification and possession of a firearm by a convicted felon:

A defendant is not justified in threatening or using force if he is attempting to commit a felony of aggravated assault or possession of firearm by a convicted felon. However, members of the jury, under Georgia self-defense laws under [OCGA §] 16-11-138, affords the justification defense for the otherwise unlawful possession or carrying of a firearm only and when to the extent the accused reasonably believes that such possession or carrying is necessary to defend himself. As such, when applied to the possession of a firearm by a convicted felon, it would justify the possession only for the duration of the necessity. If a felon came into possession of a firearm prior to any necessity arising and/or continued to have possession after any necessity has dissipated, his possession both before and after the time of necessity would be unlawful; and his possession of a firearm before and after the necessity would be felonious. However, possession during the time of necessity would not be felonious should you find self-defense.

During deliberations, the jury requested a re-charge on the "definition of self-defense and malice murder[.]" The court

9

responded by reiterating various parts of its prior charge to the jury, including the language excerpted above, but did not offer any additional explanation as to the interplay between justification and felony murder predicated on the possession of a firearm by a convicted felon.

To prove a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "If [a defendant] fails to establish one of these two prongs, we need not examine the other." *Payne v. State*, 314 Ga. 322, 328 (3) (877 SE2d 202) (2022) (citation and punctuation omitted). "To show deficient performance, the defendant must demonstrate that counsel performed counsel's duties in an objectively unreasonable way, considering all of the circumstances and in the light of prevailing professional norms." Id. at 328-329 (3). "To establish prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional error,

10

the result of the proceeding would have been different." Id. at 329 (3) (citation and punctuation omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." Id. at 329 (3) (citation and punctuation omitted). In particular, when evaluating whether an appellant has established prejudice, we "weigh the evidence as we would expect reasonable jurors to have done rather than in the light most favorable to the verdict." *Harmon v. State*, 319 Ga. 259, 265 (3) (903 SE2d 28) (2024) (citations and punctuation omitted).

On appeal, Brundage argues that the prosecutor's illustration and accompanying explanation misstated the law by suggesting to the jury that if Brundage "possessed a gun before or after the window of necessity, he could not claim that a shooting occurring *during* the window was justified[,]" allowing the jury "to find . . . Brundage guilty of felony murder predicated on being a felon in possession of a firearm — even if it found that he shot the victim in self-defense or in defense of others." By not objecting, Brundage

11

argues, his counsel performed deficiently by failing to ensure that the jury understood that it could both find Brundage guilty of possession of a firearm by a convicted felon for possessing a firearm outside of any time period it was legally justified, and find him not guilty of felony murder predicated on possession of a firearm by a convicted felon, on the basis that the possession was justified at the moment of the shooting even if he also possessed the firearm at other times. We agree.

The State's closing argument materially misstated the applicable legal standard. At the time of the shooting and also at the time of trial, if the jury concluded that Brundage was acting in self-defense when he shot Matthews, the jury was required to acquit him of felony murder, whether predicated on aggravated assault or on felon-in-possession. See OCGA § 16-11-138 ("Defense of self or others, as contemplated by and provided for under Article 2 of Chapter 3 of this title, shall be an absolute defense to any violation under this part."); *Floyd v. State*, 318 Ga. 312, 318 (2) (898 SE2d 431) (2024) ("[U]nder [OCGA § 16-11-138], if the jury believed that

12

Appellant was acting in self-defense when he shot [the deceased], the jury was required to acquit him of felony murder based on felon-in-possession.") (citing *State v. Remy*, 308 Ga. 296, 300 (3) (b) (840 SE2d 385) (2020); *Johnson v. State*, 308 Ga. 141, 145 (839 SE2d 521) (2020)). Whether Brundage illegally possessed a firearm before or after the shooting is simply not relevant to his claim of self-defense as to the murder and felony murder charges against him. But in its closing argument, the State suggested the opposite to the jury, by saying generally that "[s]elf-defense does not apply if you are outside that very, very brief window," and that in that scenario where a convicted felon possesses a firearm outside of the "window" of necessity, "you do not get self-defense" because "[y]ou shouldn't have had [a gun] anyway." No part of this argument indicated that it was limited to the felon-in-possession count and did not extend to the felony murder count predicated on felon-in-possession.

The trial court in rejecting this ineffective assistance claim did not cite any objectively reasonable strategy counsel might have for failing to object to the prosecutor's incorrect explanation of the law.

13

See *Debelbot v. State*, 308 Ga. 165, 167 (839 SE2d 513) (2020) (concluding "there is no good reason that any reasonably competent lawyer would fail to object" to prosecutor's egregious misstatement of the law as to reasonable doubt). Rather, the trial court concluded that the prosecutor's explanation was correct, because it referred to the charge of possession of a firearm by a convicted felon, not the felony murder charge, and only "a juror who wasn't paying close attention could misinterpret the prosecutor's closing" to refer to the applicability of self-defense to the felony murder charge. We disagree; there is at least a reasonable probability that even an attentive juror would understand the explanation as applying to the felony murder charge, because the felony murder charge was predicated on possession by a convicted felon. Both in her hypothetical and in her discussion of this case in the passage at issue here, the prosecutor referred not only to the possession of a firearm but to a shooting. And despite this, instead of concluding by telling the jury that a felon who possesses a firearm outside of the window of necessity may still successfully claim self-defense for charges

14

clearly premised on the shooting itself (i.e., malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of one of those crimes) but not the charge of possession of a firearm by a convicted felon, the prosecutor concluded with the blanket statement that a defendant in that situation does "not get self-defense," period.

The prosecutor's statement was correct as to the felon-in-possession count to the extent it was premised on possession outside of the moment of the shooting, but was incorrect as to the felony murder count predicated on felon-in-possession. Defense counsel already had concluded his closing argument — without including any detailed explanation of how self-defense would apply to felony murder predicated on possession of a firearm by a convicted felon — and so at the time that he failed to object, he knew that he would not have a later opportunity to correct the prosecutor's misstatement. And, based on the charge conference, counsel could have anticipated that the trial court would give an instruction that, although technically correct as a general matter, would not have

15

cleared up juror confusion caused by the prosecutor's statement. In particular, the trial court told counsel that he planned to instruct the jury that "[a] defendant is not justified in threatening or using force if he is attempting to commit the felony of aggravated assault or possession of a firearm by a convicted felon," before going on to explain how a convicted felon *could* successfully claim justification for his use of a firearm, without explaining in detail how the justification defense might apply to a charge of felony murder predicated on possession of a firearm by a convicted felon — a point the trial court acknowledged to the lawyers was "going to get confusing" to the jury.

The State's argument to the contrary on appeal is simply the same argument that the trial court accepted in denying the motion for new trial: that viewed in context, the prosecutor's statement did not apply to felony murder. But nothing in the statement or the broader context in which it appears would have told the jury that it was so limited. We conclude that Brundage has shown counsel performed deficiently for failing to object.

And Brundage also has shown that he was prejudiced by this deficient performance. There is no dispute that Brundage shot Matthews, and the evidence that Brundage possessed a gun after the time of necessity is uncontradicted by any other evidence. Ivey testified that Brundage carried his gun regularly, like a cell phone, and the jury heard testimony and statements from Ivey to the effect that Brundage retained a gun — either Matthews's gun or the gun Brundage used to shoot Matthews — for some time after the shooting. Although Brundage testified that he did not own a firearm and that Ivey was lying about Brundage carrying a gun like a phone, he did not testify specifically that he did not continue to possess a gun after the shooting. Given the undisputed testimony by Ivey that Brundage possessed a gun outside the time of necessity, this evidence was reasonably probable to lead a jury that misunderstood the legal standard to arrive at an incorrect conclusion as to whether Brundage was justified in shooting Matthews such that Brundage should be acquitted of felony murder premised on felon-in-

possession.[3] The key question for us, then, is whether Brundage has shown that it was reasonably probable that the jury was so confused on the legal standard for self-defense for felony murder predicated on felon-in-possession that it affected the verdicts.

The State argues that even if the State's statement of the law could reasonably be understood as an incorrect explanation for when a felon may claim self-defense for felony murder, such that failure to object was deficient performance, any prejudice would have been corrected by the court's charge explaining that a felon may claim self-defense for felony murder predicated on felon-in-possession. We

---

[3] Although Georgia law would preclude a claim of self-defense if Brundage shot Matthews while Brundage was committing or attempting to commit a felony that was not itself justified, see OCGA § 16-3-21 (b) (2), there is no reason to conclude that the jury may have found Brundage guilty of felony murder based on evidence that he was engaging in a felony other than the shooting itself and accompanying firearm possession. There was evidence admitted at trial that people frequently used illegal drugs in the house where the shooting occurred and that a prostitute was in Matthews's truck when he arrived. But the State has disclaimed — at the motion-for-new-trial hearing and in the District Attorney's brief to this Court — any argument that Brundage was committing a felony at the time of the shooting other than the shooting itself and the possession of a firearm. And the trial court in instructing the jury that a defendant is not justified in threatening or using force if he is attempting to commit a felony mentioned only aggravated assault and possession of a firearm by a convicted felon.

18

disagree. The prosecutor explained Georgia self-defense law using a hypothetical that suggested a convicted felon may not claim self-defense for felony murder at all if he possessed a gun outside of the window of necessity, completing its hypothetical by stating: "Self-defense does not apply if you are outside that very, very brief window before or after. You are a convicted felon, and it is unlawful for you to possess that firearm, so you do not get self-defense." In other words, the State's explanation could easily have been understood by the jury to mean that a defendant cannot claim self-defense at all if he possessed a firearm outside the window of necessity. That was an inaccurate statement of the law. And the trial court's instructions to the jury did not obviously correct that inaccurate statement. The trial court told the jury that "[a] defendant is not justified in threatening or using force if he is attempting to commit a felony of . . . possession of a firearm by a convicted felon[,]" and that "[Georgia law] would justify the possession [of a firearm by a convicted felon] only for the duration of the necessity." The court thus told the jury that a defendant would be justified in possessing a firearm "only for

19

the duration of the necessity," just as the State did. That was not wrong as far as the charge of possessing a firearm. But crucially, the trial court did not make clear that the defendant could still claim self-defense for the felony murder charge even if he illegally possessed a firearm outside the window of necessity — that he could be guilty of possessing a firearm but not guilty of felony murder due to self-defense. In short, the trial court's instructions, put together, reasonably could have been understood to reinforce, rather than correct, the State's incorrect explanation of self-defense. And that is particularly so given the trial court's instruction that a defendant is not justified in using force if he was attempting to commit the felony of possession of a firearm by a convicted felon. See *Taylor v. State*, 316 Ga. 17, 21 (2) n.4 (885 SE2d 787) (2023) (noting that instructing the jury that a person is not justified in using force if that person is attempting to commit or is committing a felony, then noting that "in this case, the arguable felony has been alleged to be aggravated assault" — a charge to which the defendant was raising justification as a defense — could have been misleading, and urging trial courts

"to take care to avoid structuring instructions in a way that could suggest that committing the felony for which a defendant claims justification could disqualify him from claiming justification for that very felony"). It is reasonable to expect that the jury understood the court's instruction through the lens of the State's statements, inviting jurors to rely on them. See *Debelbot*, 308 Ga. at 169-170 ("And although the trial court gave an instruction on reasonable doubt that would be sufficient in most cases to adequately advise the jury of the burden of proof, the charge did not cure the State's obviously wrong argument here, and to the contrary, may well have been understood by the jury as reinforcing it." (citations and punctuation omitted)). Moreover, defense counsel's own closing argument, which was given before the State's, did not address the applicability of a justification defense to a charge of felony murder based on felon-in-possession in any substantive way, so it did not work to alleviate any confusion created by the State's argument. Compare *Crayton v. State*, 298 Ga. 792, 796 (3) (a) (784 SE2d 343) (2016) (no prejudice from any deficient performance in defense

21

counsel's failure to object to comment in prosecutor's opening statement, where defense counsel responded to that comment in his own opening and trial court correctly charged the jury on the applicable law).

The fact that the jury requested the trial court to define self-defense again suggests that the jury was in fact confused by the definition. And the court's answer did nothing to alleviate any confusion, as it was simply a reiteration of what the State and the trial court previously said. Moreover, the inconsistent verdicts for felony murder predicated on aggravated assault and felony murder predicated on felon-in-possession also suggest that the jury was confused. We have abolished the rule that inconsistent verdicts — where a jury in a criminal case renders seemingly incompatible verdicts of guilty on one charge and not guilty on another — require reversal. See *Feder v. State*, 319 Ga. 66, 68-69 (2) (901 SE2d 561) (2024) (citing *McElrath v. State*, 308 Ga. 104, 108 (2) (a) (839 SE2d 573) (2020)). But inconsistent verdicts, as well as jury questions, still may be used to gauge juror confusion in considering the prejudicial

effect of an instructional failure. See *Floyd*, 318 Ga. at 323-324 (2) (b) (considering jury's note and acquittal of the defendant on other offenses for which self-defense was asserted — malice murder, felony murder based on aggravated assault, and aggravated assault — in determining that the defendant was prejudiced by counsel's deficient performance in his handling of matters related to the applicability of self-defense to felony murder predicated on felon-in-possession). And there is no principled way to reconcile the jury's verdicts of not guilty as to felony murder predicated on aggravated assault but guilty as to felony murder predicated on felon-in-possession. There is at least a reasonable probability that the jury concluded that Brundage was justified in shooting Matthews (and thus was not guilty of aggravated assault and felony murder predicated thereon) but was confused as to the applicability of a justification defense to felony murder predicated on felon-in-possession and thus erroneously concluded that it should return a guilty verdict as to that offense despite the jury's finding that he had acted in self-defense. For these reasons, Brundage has shown that

23

counsel performed deficiently by failing to object to the State's argument and that there is a reasonable probability that, but for this failure, the jury would have found him not guilty of felony murder predicated on possession of a firearm by a convicted felon or possession of a firearm during the commission of a felony.[4]

We therefore reverse Brundage's convictions for felony murder predicated on possession of a firearm by a convicted felon, as well as possession of a firearm during the commission of a felony. But because the evidence was sufficient as a matter of constitutional due process to support a conviction on those counts, the State may retry him on those counts if it wishes. See *Allen v. State*, 319 Ga. 415, 435 (3) (902 SE2d 615) (2024) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979)). Brundage admittedly shot Matthews, "issues of witness credibility and the existence of justification are for the jury to determine, and it is free to reject a defendant's claim that he acted in self-defense." *Ivey v. State*, 305

---

[4] As indicted, the charge of possession of a firearm during the commission of a felony was predicated on felony murder or one of two crimes of which Brundage was acquitted, malice murder and aggravated assault.

Ga. 156, 159 (1) (824 SE2d 242) (2019) (citation and punctuation omitted).[5]

3.   *We leave any challenges to any conviction that may be entered on the felon-in-possession count for another day.*

Thus, as to Brundage's convictions for felony murder and possession of a firearm during the commission of a felony, we need not consider Brundage's other enumerations of error. Brundage also argues that this Court should reverse his "conviction" on Count 5 for possession of a firearm by a convicted felon. But the trial court merged the possession of a firearm by a convicted felon count, so Brundage does not presently stand convicted of that offense. See *Garrett v. State*, 263 Ga. 131, 132 (2) (429 SE2d 515) (1993). And if

---

[5] This is particularly true here given the conflict between Brundage's testimony that he does not own a gun and grabbed a gun off the ground before shooting Matthews and Ivey's testimony that Brundage regularly carries a gun, as well as evidence that Brundage went to great lengths to hide Matthews's body before leaving the state. See *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021) ("[T]he defendant's testimony, in which he claimed he was justified or provoked into acting, may itself be considered substantive evidence of guilt when disbelieved by the jury, as long as some corroborative evidence exists for the charged offense."); *Martin v. State*, 306 Ga. 538, 539-541 (1) (832 SE2d 402) (2019) (defendant's extreme measures to destroy and conceal evidence of the shooting and to evade the police, which included disposing of victim's body in river, undermined his claim of self-defense).

we had upheld Brundage's felony murder conviction, any arguments as to the felon-in-possession count would be moot. See *Scoggins v. State*, 317 Ga. 832, 833 (1) n.3 (896 SE2d 476) (2023). By reversing the felony murder conviction in which the felon-in-possession count merged, that predicate felony count no longer stands merged. See *Calloway v. State*, 303 Ga. 48, 56 (2) (a) (iii) (810 SE2d 105) (2018). We remand for the trial court to enter a sentence on the felon-in-possession count, as necessary depending on the disposition of the felony murder count predicated on felon-in-possession on any retrial. And we leave any challenges to any conviction entered on the felon-in-possession count for any future motion for new trial or appeal, as necessary. See *Welbon v. State*, 304 Ga. 729, 730 (1) n.2 (822 SE2d 277) (2018) ("[A] criminal defendant in a second, post-remand appeal may raise issues relating to a new trial court order on remand, or may raise issues — such as the ineffective assistance claim in this case — that were raised but not decided in the first appeal.").

Finally, because Brundage has not challenged on appeal his

26

conviction and sentence for concealing the death of another, we affirm the judgment as to that conviction.

*Judgment affirmed in part and reversed in part, and case remanded. All the Justices concur.*

LaGrua, Justice, concurring.

I agree with the majority opinion that our prior cases on ineffective assistance of counsel and felony murder require reversal here, so I concur. Under OCGA § 16-11-138, Brundage indeed had an absolute defense to felony murder predicated on possession of a firearm by a convicted felon if the jury believed that the shooting was in self-defense. See *Johnson v. State*, 308 Ga. 141, 145 (839 SE2d 521) (2020); *Remy v. State*, 308 Ga. 296, 300 (3) (b) (840 SE2d 385) (2020). I write separately because, once again, while the jury's confusion over the interplay between self-defense and possession of a firearm by a convicted felon is understandable, I question whether OCGA § 16-11-138 was intended to protect felons who intentionally arm themselves and then use those weapons in situations like this.

27

I reiterate that, if that was not the General Assembly's intent, the General Assembly should clarify the statute. Nonetheless, that is where the law stands, so we must apply it.

I am authorized to state that Justice Colvin joins in this concurrence.

Decided January 28, 2025.

Murder. DeKalb Superior Court. Before Judge Barrie.

*Dillon McConnell*, for appellant.

*Sherry Boston, District Attorney, Jason M. Rea, Deborah D. Wellborn, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, M. Catherine Norman, Assistant Attorney General*, for appellee.